UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
RICHARD ALLAN BRITT,                )
        Plaintiff,                )
                                    )       CIVIL ACTION
v.                                  )       No. 14-30007-TSH
                                    )
CAROLYN W. COLVIN,                  )
Commissioner,                       )
Social Security Administration,     )
        Defendant.                )
_____)

**MEMORANDUM OF DECISION AND ORDER**
August 27, 2015

**HILLMAN, D.J.**

### Nature Of The Case

Plaintiff, Richard Allan Britt ("Britt" or "Plaintiff") has brought this action against the Defendant, Carolyn W. Colvin, as Commissioner of Social Security Administration ("Commissioner") seeking judicial review of a final decision by the Commissioner denying his application for Social Security Disability Insurance benefits ("SSDI benefits"). The Commissioner denied Britt's application on the grounds that he was not under a disability within the meaning of the Social Security Act ("Act"), for the relevant time period. Britt has filed a motion for judgment on the pleadings in which he argues that the Administrative Law Judge ("ALJ") erred by failing to assess additional physical limitations on the assessed Physical Residual Functional Capacity, and by not calling on the services of a medical advisor. The

Commissioner has file filed a motion for an order affirming the decision on the grounds that the Commissioner's findings are supported by substantial evidence in the record.[1]

## Background

Britt filed an application for SSDI benefits on January 3, 2011, alleging disability due to high blood pressure, diabetes, hypertension, hyperlipidemia, hormone imbalance, coronary atherosclerosis, and an injury to his left leg. (*Tr.*, at p. 11, 138-44, 172). In his SSI application, Britt stated that he became unable to work as of January 1, 2009. (*Id.*, at 11, 138). On April 28, 2011, the Social Security Administration ("SSA") found that Britt was "not disabled" and denied his application. (*Id.*, at pp. 78-80). After his request for reconsideration was denied, Britt requested hearing before an ALJ which was held on October 23, 2012. (*Id.*, at pp. 86-89, 90). On November 30, 2012, the ALJ ruled that Britt was "not disabled." (*Id.*, at pp. 11–17). On November 13, 2013, the SSA Appeals Council notified Britt of its denial of his request for review and therefore, the ALJ's decision became the final decision of the SSA. (*Id.*, at p. 1).

## Standard for Entitlement to SSDI Benefits

In order to qualify for SSDI benefits, a claimant must demonstrate that he is disabled within the meaning of the Act. The Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be severe enough to prevent the claimant from performing not only his past

---

[1] A copy of the Administrative Transcript ("*Tr.*")(Docket No. 11) has been provided to the Court under seal.

work, but any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1). Furthermore, to be entitled to SSDI, a claimant is eligible for benefits where s/he demonstrates that s/he was disabled on or before the date before which s/he was last insured. 42 U.S.C. § 423(a)(1)(A). The claimant has the burden of establishing that s/he was disabled before expiration of his/her insured status. *Brunson v. Astrue*, 387 Fed.App'x. 459 (5th Cir. 2010).

An applicant's impairment is evaluated under a five-step analysis set forth in the regulations promulgated under the statute. 20 C.F.R. § 404.1520. The First Circuit has described the analytical sequence as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment . . . mean[ing] an impairment 'which significantly limits his or his physical or mental capacity to perform basic work-related functions[?]' If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in [Appendix 1 of the Social Security regulations]? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
> These first three tests are "threshold" tests. If the claimant is working or has the physical or mental capacity to perform "basic work-related functions," he is automatically considered not disabled. If he has an Appendix 1-type impairment, he is automatically considered disabled. In either case, his claim is determined at the "threshold." If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no "Appendix 1" impairment (test 3), the SSA goes on to ask the fourth question:

> Fourth, does the claimant's impairments prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

The burden of proof is on the applicant as to the first four steps of the analysis. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [ALJ] may require."). At the fifth step of the analysis, the burden shifts to the Commissioner to show that the claimant is capable of performing jobs available in the national economy. *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). In making that determination, the ALJ must assess the claimant's RFC in combination with vocational factors, including the claimant's age, education, and work experience. 20 C.F.R. § 404.1560(c).

## **Findings of Fact**

1. *Educational, Occupational and Personal History*

Britt's date last insured was December 13, 2010. (*Id.,* at pp. 13, 168). He was 60 years old on January 9, 2009, the onset date of disability, and 62 years old on his date last insured. (*Id.,* at p. 168). He is a high-school graduate who completed one or two years of college and has past relevant work as a construction supervisor. (*Id.,* at pp. 23, 51, 173). Britt was part-owner of a drywall business for the last three years that he worked. (*Id.*, at p. 26). In that capacity, he supervised two employees and that he lifted a lot of weight. (*Id.*). He began receiving Social Security retirement benefits at age 62. (*Id.*, at pp. 28-29).

4

2. *Daily Activities*

At the time of the hearing, Britt testified as to the following activities. He lives with his son, daughter-in-law, and three grandchildren. (*Id.*, at p. 24). He drives and goes to the store to shop for himself and drives to see his other children from his second marriage. (*Id.*, at p. 25). He sees them three or four days a week—he often babysits them and takes them to the store or movies. (*Id.*). He is able to cook for himself; his daughter-in-law does his laundry. (Tr. 40). He dresses himself, but has some difficulty putting on his socks and shoes. (*Id.*).

Britt further testified that for the two years before the hearing, he could comfortably walk about two steps and lift/carry about two gallons of milk. (*Id.*, at pp. 35-36). He had been a power weight lifter until his early 40s and at the time of the hearing, worked out on a universal machine two or three times a week for twenty minutes at a time. (*Id.*, at pp. 33-34).

3. *Plaintiff's Historical Medical History*

a. *Plaintiff's Self-Reported History*

Britt testified that he is extremely forgetful which he attributes to his hypertension, which he has had for twenty years and for which he takes medication. (*Id.*, at pp. 29-30). He does not suffer from any mental health issues. (*Id.*, at p. 41). He has had diabetes since age 39 and takes insulin. (*Id.*, at p. 30). Britt testified that he usually has high blood sugar, which makes him feel very lethargic. (*Id.*, at p. 41). He also testified that he has had diabetic neuropathy in both hands for the past four or five years, but is still is able to type with one finger and can lift/carry small objects, such as papers/pencils/cups. (*Id.*, at pp. 30-31, 37). He also reports having blurry vision. (*Id.*, at p. 42). Britt has had cellulitis in both legs for several years and experiences infections about once a year. (*Id.*, at p. 31). He testified that he was hospitalized for infections about four

times in the last two years and that he was treated intravenously with medication. (*Id.*, at pp. 31-32). He has had a total left hip replacement. (*Id.*, at p. 32).

Britt further testified that had a triple heart bypass in 1998 and he experiences shortness of breath, which he treats with exercise. (*Id.*, at p. 39). He denies that the weather affects his heart or respiration. (*Id.*, at p. 42). He experiences dizziness which he attributes to hormone therapy and blood pressure medication (*Id.*, at p. 45). He testified that he had severe pain in both hips, which he rated 10/10 without medication and 7/10 with medication prior to his hip replacement surgery. (*Id.*, at pp. 37-38). The only pain medication he currently takes is Advil and Aleve. (Tr. 38).[2]

b. *Britt's Treating Physicians*

On May 18, 2009, Britt was examined by the Riverbend Medical Group ("Riverbend") for left upper leg pain. (*Id.*, at p. 274). He reported to them that he was a competitive weight lifter and that, one month earlier, he was doing a squat-like exercise when he felt a pull in his left upper leg. *(Id.)*. Britt reported no radiation of pain into his leg and no numbness, tingling, or weakness. (*Id.*). On examination, he had slight tenderness over the mid-anterior proximal left thigh, but no evidence of bulging. (*Id.*, at p. 275). He had no tenderness on palpation of the remainder of the thigh. (*Id.*). Britt was prescribed Ibuprofen and advised that he could continue moderate bike riding. (*Id.*, at p. 276). At a follow-up visit on June 11, 2009, Britt again complained of left leg pain and reported that he was still not able to exercise. (*Id.*, at p. 277).

---

[2] Although the ALJ found that Britt to be a generally credible witness, the ALJ found his subjective allegations to be inconsistent with the objective record. The ALJ's credibility determination is substantially supported by the record as there are numerous instances in which Britt's testimony regarding his pain, symptoms and injuries are inconsistent with the medical records and/or the activities which he is able to perform according to his testimony and the documentary evidence. These inconsistencies apply both to the time periods before and after the date last insured.

Examination of his extremities revealed full range of motion, and no edema, clubbing, or cyanosis. (*Id.*, at p. 279). Neurological examination showed 5/5 muscle strength and reflexes intact. (*Id.*). Britt continued to complain of left leg pain at his next visit on July 10, 2009. (*Id.*, at p. 281). He characterized the pain as sharp and rated it at 4/10. (*Id.*). Physical examination was normal apart from tenderness over the left proximal quads on palpation and straight leg raising. (*Id.*, at p. 282). He was prescribed medication, physical therapy and advised to follow up in a month. (*Id.*, at p. 283).

On August 6, 2009, Britt returned to Riverbend for an unrelated complaint. (*Id.*, at p. 288). He reported feeling well and that the pains and aches in his lower extremities were much better. (*Id.*). He denied muscle pain or joint pain or swelling. (*Id.*). On August 11, 2009, Britt presented to the Baystate Medical Center emergency room complaining of blurry vision, dizziness, and lightheadedness. (*Id.*, at p. 247). He was noted to ambulate well and denied shortness of breath. (*Id.*). He reported that he had diabetes and had not checked his blood sugar in a week and thought it was high. (*Id.*, at p. 254). Blood work confirmed that his glucose level was high. (*Id.*, at p. 249). He was given an IV treatment, his glucose level lowered, and he was discharged later that night. (*Id.*, at pp. 242-45). He returned to the emergency room on August 31, 2009, again complaining of dizziness with increased movement and blurred vision. (*Id.*, at p 233). The plaintiff was again treated with IV infusion and discharged. (*Id.*, at pp. 218-24).

On October 29, 2009, Britt had a follow up appointment at Riverbend, for his diabetes, hypertension, and hyperlipidemia. (*Id.* at p. 292). Dr. Hyun-Young Park noted that Britt's blood sugar was starting to do better and that he had "not been taking regular insulin sliding scale for over a year." (*Id.*). Britt denied experiencing any fatigue, vision changes, double vision,

7

shortness of breath, fainting, weakness, or numbness. *(Id.)*. Among other finding, the doctor indicated that: Britt had poor control of his diabetes; his blood pressure was good; and Lipitor was increased to keep plaintiff's cholesterol level less than 100. (*Id.*, at p. 295). At follow-up visit on December 13, 2010, Dr. Park noted that Britt's glucose was "very well controlled" and that he had not had any hypoglycemic episodes. (*Id.*, at p. 300). Britt again denied muscle aches, fatigue, vision changes, double vision, shortness of breath, heat/cold intolerance, fainting, weakness, or numbness. (*Id.*, at p. 300). Dr. Park reported that Britt was alert, oriented, and in no acute distress. (*Id.*, at p. 302). He had intact sensation and no edema, clubbing, or cyanosis in his extremities. (*Id.*). Dr. Park also noted that he had decent control of his diabetes, his blood pressure was excellent, but that he had poor control over his hyper-lipids; consequently, his Lipitor was increased. (*Id.*, at p. 303).

c. *Britt's Post-Date Last Insured Medical Records*

Britt's treating physician, Doctor Park, ordered an x-ray of Britt's left hip on December 30, 2011, due to Britt's complaint that he was experiencing pain which was not alieved by physical therapy. Dr. Park noted that approximately a year before, he had fallen on the ice and injured his left hip; thereafter, the hip was bothersome and the pain had never resolved. Dr. Park determined that there were "advanced osteoarthritic changes" in the left hip (*Id.*, at pp. 406, 410). In February 2012, Britt's treating physician, Dr. Mindess notes that Britt was experiencing left hip pain; Dr. Mindess notes that Britt reported injuring his hip about one year prior when he slipped and stopped himself from falling and heard a popping noise (*Id.*, at p. 401). Dr. Mindess concluded that there was severe DJD of the left hip and recommended hip replacement surgery. In May 2012, Britt was seen at Riverbend. Dr. Thau noted that he was recovering from total hip

8

replacement surgery done two weeks prior and was not experiencing any joint pain, stiffness or swelling. (*Id.*, at p. 412). On June 29, 2012, Britt underwent a physical therapy initial examination which indicated that he used a cane to ambulate stairs, that he could walk for 30-45 minutes at a time, and that he has some unspecified limitation with respect to reaching/pushing/pulling, lifting/carrying, sitting/standing bending/squatting, mobility/ambulation. (*Id.*, at p. 490). Britt responded well to physical therapy and through the first three weeks, had an increase in strength, improved gait and less reliance on using a cane. (*Id.*, at p. 510). In connection with a post-surgical follow-up in June 2012, Dr. Rhodes, who performed the surgery, noted that 5-6 weeks out from his total hip replacement he had little discomfort and no new problems; physical therapy was helping with function. (*Id.*, at p. 451). Dr. Rhodes also reported that there was good strength across the hip and that there was full range of motion. (*Id.*).

3. *Residual Functional Capacity Assessment By State Agency Physicians*

On April 20, 2011, Brian Strain, M.D., a State agency physician, reviewed the available evidence of record and completed a Physical Residual Functional Capacity Assessment ("RFC") of Britt. (*Id.*, at pp. 60-62). Dr. Strain opined that: Britt could lift/carry fifty pounds occasionally and twenty-five pounds frequently; sit about six hours in an eight-hour workday; stand and/or walk at least six hours in an eight-hour workday; frequently climb ramps/stairs, balance, stoop, kneel, and crouch; and occasionally climb ladders/ropes/scaffolds and crawl. (*Id.*, at pp. 61-62). He further opined that Britt should avoid concentrated exposure to hazards such as heavy machinery and heights. (*Id.*, at p. 62). On September 9, 2011, K. Malin Weeratne, M.D., a second State agency physician, reviewed the updated evidence and found that Britt had the

same exertional and postural limitations Dr. Strain identified. (*Id.*, at pp. 72-74). Dr. Weeratne opined that in addition to avoiding hazards, Britt should also avoid concentrated exposure to extreme cold and pulmonary irritants. (*Id.*, at p. 74).

### 4. *Vocational Expert's Testimony*

The vocational expert testified that Britt had previously worked as a drywall installer, which he classified as "medium" exertional work, and as a construction supervisor, which he indicated is generally performed at the light exertional level. (*Id.*, at p. 51). The ALJ first posed the following hypothetical question to the vocational expert:

> If you were to assume a hypothetical individual of the claimant's age, education and work experience, somebody limited to what Social Security defines as medium exertional activity; work should not require the operation of foot or leg controls; work should not be around dangerous, moving machinery; work should not be performed at heights, using ladders, ropes or scaffolds. Would an individual so limited be able to perform the claimant's past jobs or other jobs existing in the local or national economy?

(*Id.,* at pp. 51-52).

The vocational expert responded that the individual could perform the plaintiff's past relevant work as a construction supervisor. (*Id.*, at p. 52).   The ALJ then asked the vocational expert as to what work the individual could perform if further restricted to "light" work.   The vocational expert testified that, in general, he could still perform the construction supervisor job.

### 5. *ALJ's Factual and Legal Findings*

The ALJ made the following determinations:

> 1. The claimant met the insured status requirements of the Social Security Act on December 13, 2010, but not thereafter.
>
> 2. The claimant has not engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2009 through his date last insured ... .

    3. Through the date last insured, the claimant had the following severe impairments: diabetes mellitus, hernia, *coronary atherosclerosis disease, high blood pressure*, and status post-surgical left hip replacement.

    4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equals one of the listed impairments … .

    5. ... through the date last insured, the claimant had the residual functional capacity to perform light work … except he could not engage in activities requiring the operation of foot or leg controls, not be around dangerous moving machinery, and not perform work at heights or using ladders, ropes or scaffolding.
    ....

    6. Through the date last insured, the claimant was capable of performing past relevant work as a supervisor construction [sic.] … this work did not require the performance of work-related activities precluded by claimant's [RFC].
    ….

    7. The claimant was not been under a disability, as defined in the Social Security Act, at any time from January 1, 2009, the alleged onset date, through December 13. 2010, the date last insured.

*Id.*, at pp. 13–17(citations to statute and regulations omitted).

## **Standard of Review**

### *Affirmance or Reversal of Commissioner's Decision*

Britt has filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where a review of the contents of the pleadings establishes that judgment is warranted. *See Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639 ($2^d$ Cir. 1988). If, after a review of the pleadings, the Court is convinced that based on the a review of the facts as alleged the claimant cannot prove that he is entitled to relief, judgment on the pleadings in favor of the

Commissioner may be appropriate. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99 (1957). Respondent has filed a motion seeking an order affirming the decision of the Commissioner.

Under § 205(g) of the Act, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. *See* 42 U.S.C. § 405(g). The ALJ's finding on any fact shall be conclusive if supported by substantial evidence and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion," even if the record could justify a different conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *see also Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987).

In applying the "substantial evidence" standard, the Court must bear in mind that it is the province of the ALJ, not the Court, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts in the evidence. *Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 755, 769 (1st Cir. 1991). Ultimately, the Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the cause for a rehearing, 42 U.S.C §405(g)3, but reversal is warranted only if the ALJ committed a legal or factual error in evaluating a claim or if the record contains no "evidence rationally adequate… . to justify the conclusion." *Roman-Roman v. Commissioner of Social Security*, 114. Fed. App'x. 410, (1st Cir.

---

[3] Section 405(g) provides that "[t]he [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....".

2004); *see also Manso-Pizarro v. Sec'y of Health and Human Services*, 76 F. 3d. 15 (1st Cir. 1996).

## Discussion

### *Scope of the Issues Raised On Britt's Appeal*

In support of his motion for judgment on the pleadings, Britt asserts that the ALJ's decision is not supported by substantial evidence because the ALJ failed to assess additional physical limitations to the RFC despite substantial medical evidence to support the imposition of such additional limitations. Britt also asserts that the ALJ erred by not calling on the services of a medical advisor to review the medical evidence, including medical records beyond December 13, 2010 (the date last insured), to determine whether based thereon, it could reasonably be inferred that the that the *onset* of a disabling impairment occurred earlier than reflected in such records.

The Respondent, on the other hand, argues that the ALJ properly assessed the medical evidence.  More specifically, Respondent argues that the ALJ's finding as to Britt's RFC was consistent with the opinion of the medical experts, all of whom opined that Britt could perform medium work, as well as the treatment records and Britt's daily living activities. Respondent also points out that the ALJ further reduced Britt's exertional capacity to "light work," and added some additional restrictions to those suggested by the medical experts, *i.e.*, eliminating the use of foot or leg controls.   As to Britt's second claim, Respondent argues that the ALJ's failure to call on the services of a medical provider was not error given that the ALJ found that Britt was not disabled at any point during the insured period.

*Whether The ALJ's RFC Determination Is Supported By Substantial Evidence In The Record*

Britt asserts that the ALJ's determination that he had an RFC which permitted him to engage I light exertional work-- with restrictions as to operation of foot or leg controls, dangerous moving machinery, and heights or using ladders, ropes or scaffolding-- was inconsistent with the substantial evidence in the record.   In support, he points to medical records from 2011 through 2012, which detail increasing pain in his left hip culminating in hip replacement surgery in in March 2012. (*Tr.*, at 397, 456).   Britt suggests that these medical records establish that he suffered from a degenerative left him condition which rendered him disabled during prior to December 13, 2010 and seemingly suggests that the ALJ failed to adequately consider the conditions of left hip when determining his RFC. He further argues that the ALJ failed to adequately consider the combined effect of his multiple ailments resulting in a flawed RFC.

Britt cites to the medical records generated after the last insured date, *i.e.,* the medical records after December 13, 2010, in support his argument that the ALJ failed to properly consider that the hip pain he was suffering in 2009 was the result of a degenerative condition which would require more significant restrictions than those reflected in the ALJ's RFC assessment.   I agree with Britt that the two State agency physicians that reviewed his medical records and determined his RFC arguably failed to take into consideration the later medical records which indicated that his left hip pain was due to a degenerative condition which ultimately required hip replacement surgery. Instead, it appears that they relied solely on the medical records prior to December 13, 2010.   The ALJ also relied on medical records generated prior to the date last insured, most notably on office notes from Britt's August 6, 2009 and

14

December 13, 2010 visits to Riverbend, which, for the most part, indicate that his left hip ailment had resolved.[4] However, the ALJ also *expressly* considered the medical records from after the last insured date, including the records which diagnosed Britt with a degenerative hip condition and the post-hip replacement surgery records. He also considered Britt's testimony regarding his daily activities. Considering the totality of the medical records and other evidence, he placed further limitations on the RFC findings of the state agency physicians[5]. More specifically, he added the following restrictions: any work should not require Britt to operate foot or leg controls, be around dangerous, moving machinery, or performed at heights, using ladders, ropes or scaffolds. The ALJ also reduced Britt's exertional capacity to light work. Given the medical records and other evidence, I find that the ALJ's determination of Britt's RFC is supported by the substantial evidence in the record.

Britt made a passing reference to the ALJ failing to adequately consider the combined effect of his multiple physical impairments on his ability to perform basic work, which, he asserts, resulted in a flawed RFC assessment. Assuming that Britt has preserved this issue, his assertion is simply incorrect. First, the state agency physicians who reviewed Britt's medical records and established the baseline RFC utilized by the ALJ both considered Britt's alleged combined physical impairments. *See* (*Id.,* at pp. 60-62, 72-74). Furthermore, a careful review of

---

[4] At an August 6, 2009 visit to Riverbend, Britt reported feeling well and that the pains and aches in his lower extremities were much better; he denied that he was suffering from muscle pain or joint pain or swelling. At another office visit in December 2010, Britt again denied that he was experiencing any muscle aches and there is no mention in the medical notes from that visit of any left hip pain.

[5] As noted above, both Drs. Weeratne and Strain opined that Britt could meet the exertional demands of *medium* work. Dr. Strain opined that he would have to avoid concentrated exposure to hazards such as machinery and heights. Dr. Weeratne agreed with Dr. Strain's assessment, but added that Britt should also avoid concentrated exposure to the following additional hazards: extreme cold, fumes, odors, dusts, gases, poor ventilation, etc. The ALJ gave Dr. Weeratne's opinion some weight.

the record establishes that in determining Britt's RFC, the ALJ considered Britt's alleged impairments individually and in combination: (1) the ALJ made a finding that Britt had several severe impairments, including diabetes mellitus, hernia, coronary atherosclerosis disease, high blood pressure, and status post-surgical left hip replacement; (2) the ALJ discussed the medical evidence regarding each impairment, relevant symptoms and Britt's recovery, or lack thereof; and (3) the ALJ found that the credible limiting effects of Britt's alleged *impairments* to be consistent with the RFC assessment. The record substantially supports the ALJ's RFC determination based on Britt's alleged impairments whether considered individually, or in combination.[6]

*Whether The ALJ Erred By Not Having A Medical Advisor Review The Medical Evidence*

Britt asserts that based on the medical evidence in the record, it could be reasonably inferred that the onset of his disabling condition occurred prior to the date last insured. He then argues that if the ALJ did not find sufficient proof of such a disabling condition in the medical record, in accordance with Social Security Ruling ("SSR") 83-20[7], he should have called on the services of a medical advisor. The Respondent argues that because the ALJ did not find that Britt was disabled at any point during the insured period, he was not required to obtain medical expert testimony.

---

[6] In his submission, Britt does not suggest what further limitations were warranted given his alleged severe impairments, nor has he explained why the RFC assessed by the ALJ was inconsistent with the record evidence, that is, he has not made any attempt to explain how, given the medical and other evidence, he would be unable to perform light exertional work with the restrictions specified by the ALJ.

[7] Social Security Rulings, are 'binding on all components of the Social Security Administration,' including ALJs. *See* 20 C.F.R. § 402.35(b)(1).

Pursuant to SSR 83-20, where Commissioner *has determined the claimant is disabled*, the ALJ must establish the onset of the disability. *See* SSR 83–20, 1983 WL 31249, at *1 (S.S.A.1983).

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Id.,* at *3.

Britt's claim fails in the first instance because "[a]n ALJ is not required to consider SSR 83–20 unless the ALJ first finds that the claimant was disabled at some point prior to the date last insured." *Silverio v. Astrue*, No. CIV.A. 10-40202-FDS, 2012 WL 996857, at *6 (D. Mass. Mar. 21, 2012). In this case, the ALJ determined that Britt was not disabled during the relevant period. However, even if I were to assume that SSR-83-20 applies, for the following reasons Britt's argument fails.

Essentially, where the onset date must be inferred from the medical and other evidence describing the history and symptomatology of the disease process, SSR 83–20 directs the ALJ to retain the assistance of a medical advisor. *See Mason v. Apfel*, 2 F. Supp. 2d 142, 150 (D. Mass. 1998). In this case, the record evidence was unambiguous that Britt was not disabled during the insured period, that is, it was not necessary to infer an onset date. More specifically, the medical evidence established that in or about April 2009, Britt felt a pull in his upper left leg area while doing squat type exercises. In May 2009, he was seen at Riverbend by Dr. Park for, among

other ailments, pain in his left hip. He continued to feel pain and discomfort in the left hip area through 2009 and into 2010, but the pain had completed resolved itself prior to December 13, 2010.  Sometime in or about February 2011, Britt slipped on the ice and injured his left hip. *Thereafter*, he suffered progressively worse pain and functioning in his left hip, which led to a diagnosis of a degenerative hip condition and, ultimately, hip replacement surgery in May 2012. As this time line makes clear, while Britt may have had a degenerative condition, the medical evidence was unambiguous that it did not exist at a disabling level at any point during the insured period.   Therefore, it was not necessary for the ALJ to call on the services of a medical advisor. *See Silverio,* 2012 WL 31249 (ALJ required to call on medical expert on after first making a finding of disability; where ALJ found no objective support for finding of disability during insured period, no medical expert was necessary).

## Conclusion

For the foregoing reasons, the Plaintiff's Motion For Judgment On The Pleadings (Docket No. 16) is ***denied*** and Defendant's Motion For Order Affirming The Decision Of The Commissioner (Docket No. 21) is ***allowed***.

/s/   Timothy S. Hillman
TIMOTHY S. HILLMAN
DISTRICT JUDGE